## GOODSPEED *vs.* THE EAST HADDAM BANK.

An action on the case, for a vexatious suit, may be sustained against a corporation aggregate.
Therefore, where the plaintiff brought such action against an incorporated bank, alleging, that the defendants, without probable cause, and with a malicious intent, unjustly to vex, harass, embarrass and trouble the plaintiff, commenced by writ of attachment, and prosecuted against him, a certain vexatious suit, and after the plaintiff, on the trial of the cause, had produced all his evidence, the defendants moved for a non-suit, which was granted by the court, on the ground, that the defendants were not liable for such cause of action ; it was held, that such non-suit must be set aside, and a new trial granted. (Two judges dissenting.)

THIS was an action on the case, for a vexatious suit, brought against the East Haddam bank, described in the plaintiff's declaration, as a "corporation, established by the laws of the state of Connecticut, with power to sue and be sued." The declaration alleged, that the defendants, on the

Goodspeed *v.* The East Haddam Bank.

24th day of January, 1849, without probable cause, and with a malicious intent unjustly to vex, harass, embarrass and trouble the plaintiff, caused to be issued against him, a writ of attachment, in due form of law, directed to the sheriff of Middlesex county, his deputy, or either constable of the town of East Haddam, in said county, commanding them to attach, to the value of five thousand dollars, the goods or estate of the present plaintiff, and for want thereof, to attach his body ; alleging in their declaration, in said suit, that the plaintiff had made certain false, deceitful and fraudulent representations, with the intention of defrauding, and whereby the plaintiffs in said suit had been defrauded, to their damage, to the amount of five thousand dollars. It then recited the writ and declaration, which were founded on certain alleged fraudulent representations, made for the purpose of procuring the discount of certain notes by said bank, the makers and endorsers of which were insolvent, at the time of such discount, and so known to be by the plaintiff; and proceeded to allege, that, before the supe rior court for the county of Middlesex, on the fourth Tuesday of February, 1850, said bank still prosecuting said suit, with the same intent as before averred, the defendant therein, upon a full trial of said cause, upon the general issue, by a verdict of the jury and the judgment of said court, was found not guilty, and wholly acquitted of the charges and pretended causes of action in said suit, and recovered a judgment therein, for his costs.   The declaration contained an allegation of the want of probable cause, and concluded with the usual averment of damage to the plaintiff.

The cause came on for trial before the jury, at Haddam, at the August term, 1852.

The plaintiff, to prove the allegations in his declaration, introduced· in evidence the record of the court in the cause referred to in his declaration, showing the institution and prosecution of said suit, by the defendants, and the final

determination thereof, in favor of the present plaintiff; and to show, that said suit was instituted and prosecuted by said bank, without probable cause, and maliciously, to the injury of the plaintiff, several witnesses were introduced, and also the record of the court in the cause referred to, in the plaintiff's declaration. After the plaintiff had produced all his evidence, and rested his case, the defendants moved for judgment, as in case of nonsuit, and the court being of opinion, that the plaintiff had failed to make out a *prima facie* case, granted the motion of the defendants, and ordered a judgment, as in case of nonsuit, to be entered in said cause.

The plaintiff moved to set aside such nonsuit, which the court refused to grant. Whereupon, the plaintiff, by motion in error, brought the case before this court.

*Baldwin* and *Bulkeley*, with whom were *Tyler* and *Culver*, in support of the motion, contended, 1. That the evidence showed, that the suit of the bank against the present plaintiff, was commenced without any cause of action, and that the plaintiffs must have known, they had no cause of action, which is enough to sustain the present suit, if such suit can be maintained against a corporation. *Ives* v. *Bartholomew*, 9 Conn. R., 309. *Whipple* v. *Fuller*, 11 Conn. R., 582.

2. That wherever a corporation do an act, or direct it to be done, within the scope of their corporate powers, they are liable for the consequences of such act, if it be of a tortious nature, and to the prejudice of others. *Yarborough* v. *Bank of England*, 16 East, 6. *Beach* v. *Fulton Bank*, 7 Cowen, 485. *Foster* v. *Essex Bank*, 17 Mass., 503. *Riddle* v. *Proprietors Locks and Canals*, 7 Mass., 187. *Chesnut Hill Turnpike* v. *Rutter*, 4 Sar. & Rawle, 15. *Merrills* v. *Tariff. Mg. Co.*, 10 Conn. R., 384. Angell & Ames, 207, 218–225. Ejectment and trespass will lie against them. Angell & Ames, 102, 103. *Dater* v. *Troy Turnpike & R. R. Co.*, 2 Hill, 630. *Precinct in Rehoboth* v. *Catholic*

*Congregational Church,* 23 Pick., 139. *Bloodgood* v. *Mohawk & Hudson River R. R. Co.,* 18 Wend., 9. *Smith* v. *Birmingham Gas Light Co.* 1 A. & E., 526. *Eastern Counties Railway Co.* v. *Brooks,* 2 Eng. Law & Equity, 406.

3. That a corporation is responsible for the acts of its agents, in case, or even in trespass, if the acts are directed, sanctioned, or approved by it. Angell & Ames, 132, 174, 175, 403, 404. *Life & Fire Ins. Co.* v. *Merchants Ins. Co.,* 7 Wend., 31. *Bank Commis.* v. *Bank of Buffalo,* 6 Paige, 497. *Ward* v. *Sea Insurance Company,* 7 Paige, 294. *Underwood* v. *Newport Lyceum,* 5 B. Monroe, 138. *Rochester White Lead Co.* v. *City of Rochester,* 3 Comstock, 469. 1 Sandford Sup. Ct., 222. *New York* v. *Bailey,* 2 Denio, 433. *Thayer* v. *Boston,* 19 Pick., 515. *Clark* v. *Washington,* 12 Wheaton, 40. And that, too, even though the acts were malicious and illegal. *Hooker* v. *New Haven & Northampton R. R. Co.,* 14 Conn. R., 146. *Goodloe & Smith* v. *The City of Cincinnati,* 4 Ham., 500. *McCombs* v. *Town Council Akron,* 15 Ohio, 476. *Hall* v. *Conn. River Steamboat Co.,* 13 Conn. R., 324. *Merrils* v. *Tariff. Mg. Co.,* 10 Conn. R., 384.

4. That a corporation, having the power of suing, is responsible for the improper exercise of that power, to the prejudice of others, in an action for a vexatious suit.

*Dutton* and *W. D. Shipman,* contra, contended, 1. That this action could not be sustained, without proof, not only of want of probable cause, but of malice. Both must concur. Malice is the gist of the action. 1 Sw. Dig., 492. 2 Greenl. Ev., 453. *Farmer* v. *Darling,* 4 Burr, 1971. *Stone* v. *Crocker,* 24 Pick., 81–83. *Bell* v. *Graham,* 1 Nott & McCord, 278. *Arbuckle* v. *Taylor,* 3 Dowl., 160. *Turner* v. *Turner,* Gow's R., 20. *Cohen* v. *Morgan,* 6 D. & R., 8. *Commonwealth* v. *Snelling,* 4 Pick., 321, 350. *Mitchell* v. *Jenkins,* 5 B. & Ad., 588, 594. *Ives* v. *Bartholomew,* 9 Conn. R., 309. *Stone* v. *Stevens,* 12 Conn. R., 219.

2. That a corporation, from its very nature, can not entertain malice. It can not commit a crime. It can not be indicted for a crime or a misdemeanor. *State* v. *Great Works Mill & Manuf. Co.*, 20 Maine, 41. *McClelland* v. *Bank of Cumberland*, 24 Maine, 566.

3. That no case can be found, where an action has been sustained against a corporation, for the willful or malicious acts of its agents. Reference to some of the strongest cases, where actions for torts have been sustained against these artificial persons, will show, that they have not been held liable, where malice was essential to maintain the cause of action. Angell & Ames, sec. 311, and cases there cited.

4. That a corporation is not liable for the unauthorized and unlawful acts of its agents or officers, though done *colore officii.* Angell & Ames, sec. 311, and cases there cited. *Vanderbilt* v. *Rich. Turnpike Co.*, 2 Comstock, 479. *Thayer* v. *Boston*, 19 Pick., 516, 517. *State* v. *Great Works Mill & Manuf. Co.*, 20 Maine, 41. *Salem* v. *Gloucester Bank*, 17 Mass., 1. *Mayor of Albany* v. *Cunliff*, 2 Comstock, 105.

5. That, from the relations of the directors of the East Haddam Bank to the corporation itself, an unfounded and malicious suit, brought by such directors, raises no presumption that it was authorized by the corporation itself; because, 1. They do not derive their authority to bring suits, from any particular instructions of the stockholders, either expressed or implied. 2. The duties of the directors are prescribed by the charter. 3. The stockholders can not know anything about the character of the suits which the directors may bring, or the propriety of continuing or discontinuing them. They have no control over the directors, in any such matter. *Fox* v. *Northern Lib.*, 3 Watts & Sergt., 103, 106.

6. That the directors are the agents of the corporation, receiving their powers from the charter, and, if they do a willful or malicious act, they exceed their powers, lose sight

of the business of the corporation, and no longer act as its agents ; and, in such case, the corporation is no more liable for their act, than is an individual principal, for the willful, malicious, and unauthorized acts of his agent. Angell, & Ames, 388, 299. *Wright* v. *Wilcox,* 19 Wendell, 343. *Fox* v. *Northern Lib.,* 3 Watts & Serg., 103, 106. *Croft* v. *Alison,* 4 B. & Ald., 590. *Macmanus* v. *Cricket,* 1 East, 106.

7. That the part of the evidence which consists of the acts and declarations of the officers of the bank, not made *communicato consilio,* is inadmissible, to affect the corporation. Angell & Ames, sec. 309, and cases there cited.

8. That the facts found upon the record, show neither want of probable cause, nor malice, in the directors, but the fair inference to be drawn from them is, that they acted in good faith.

CHURCH, C. J. This action is based upon the provisions of our statute, entitled, " An act to prevent vexatious suits," and is subject to the same general principles as are actions on the case, for malicious prosecutions, at common law.

The plaintiff alleges, that the defendants, the East Haddam Bank, a body politic and corporate, without probable cause, and with a malicious intent, unjustly to vex, harass, embarrass, and trouble the plaintiff, commenced, by a writ of attachment, and prosecuted against him, a certain vexatious suit or action for fraudulent representations, to the injury of said bank, and which action resulted in a verdict and judgment against the bank, and in favor of the present plaintiff.

On the trial of this cause, by the superior court, the defendants moved for a nonsuit, on the ground that the plaintiff, by his evidence, had failed to make out a *prima facie* case ; which motion the court granted, and judgment of nonsuit was entered against the plaintiff, which he now moves to set aside.

The judgment of the superior court, in granting the non-

Goodspeed *v.* The East Haddam Bank.

suit, as we understand, was founded solely upon the ground, that a corporation aggregate was not, by law, liable for such a cause of action as was set up by the plaintiff, in his declaration : at least, no other ground of nonsuit or objection to the plaintiff's action has been argued before us. And, therefore, irrespective of the evidence detailed in the motion, we confine ourselves to what we suppose to be the sole question in the case.

We assume, that the plaintiff has sustained the damage he claims, by reason of the prosecution of the vexatious suit, and the question is, has he a legal remedy against the bank ?

The claim of the defendants is, that the remedy for this injury, is to be sought against the directors of the bank, or the individuals, whoever they might have been, by whose agency the vexatious suit was prosecuted, and not against the corporation. We think, that, to turn the plaintiff round, to pursue the proposed remedy, would be trifling with him and with his just rights, and would be equivalent to declaring him remediless ; and, in this case, at least, that there was a wrong where there is no remedy. It is notorious that, ordinarily, the action of bank directors is private,—that their records do not disclose the names of the individuals supporting or opposing any resolution or vote, and if they do, that the offending persons may be irresponsible and insolvent. The language of Tilghman, C. J., in a case very similar to the present, in which it was urged, that a corporation was not liable for a suit, but only the individuals committing it, is applicable here. " This doctrine," he said, " was fallacious in principle, and mischievous in its consequences, as it tends to introduce actual wrongs and ideal remedies ; for a turnpike company might do great injury, by means of laborers having no property to answer damages," &c. 4 Sarg. & Rawle, 16. To the same effect is the language of Shaw, C. J., in the case of *Thayer* v. *Boston*, 19 Pick., 511. He

says, "The court are of opinion, that this argument, if pressed to all its consequences, and made the foundation of an inflexible, practical rule, would often lead to very unjust results."

Still more explicit is the opinion of the court, in the case of *The Life and Fire Insurance Company* v. *Mechanics' Fire Insurance Company,* 7 Wend., 31. There, as here, it was contended, that the act was unauthorized, and must therefore be considered as the act of the officers of the company, and not of the company itself. And the court says, "This would be a most convenient distinction for corporations to establish : that every violation of their charter or assumption of unauthorized power, on the part of their officers, although with the full knowledge and approbation of the directors, is to be considered the individual act of the officers, and is not to prejudice the corporation itself. There would be no possibility of ever convicting a corporation of exceeding its powers, and thereby forfeiting its charter, or incurring any other penalty, if this principle could be established."

The real nature, as well as the law, of corporations, within the last half century, has been in a progress of development, so that it has grown up, from a few rules and maxims, into a code. In the days of Blackstone, the whole subject of corporations, and the laws affecting them, were discussed within the compass of a few pages; now, volumes are required for this purpose. These institutions have so multiplied and extended within a few years, that they are connected with, and in a great degree influence, all the business transactions of this country, and give tone and character, to some extent, to society itself. We do not complain of this ; but we say, that, as new relations, from this cause, are formed and new interests created, legal principles of a practical rather than of a technical or theoretical character must be applied.

And so, in the course of this progress, it has been. It

was said by Lord Coke, "that corporations had neither souls nor bodies;" and by somebody else, "that they had no moral sense;" and from thence, or for some other equally insufficient reason, it was inferred, and so repeatedly adjudged, that they could not be subjected in actions of trover, trespass, or disseisin, and indeed, that they could not commit wrongs, nor be liable for torts, with a few exceptions, as we shall see.

Had Lord Coke lived in this age and country, he would have seen, that corporations, instead of being the soulless and unconscious beings he supposed, are the great motive powers of society, governing and regulating its chief business affairs; that they act, not only upon pecuniary concerns; but, as having conscience and motives, to an almost unlimited extent, they are entrusted with the benevolent and religious agencies of the day, and are constituted trustees and managers of large funds promotive of such objects.

The views of the old lawyers, regarding the real nature, power, and responsibilities of corporations, to a great extent, are exploded in modern times, and it is believed, that now, these bodies are brought to the same civil liabilities as natural persons, so far as this can be done practically, and consistently with their respective charters. And no good reason is discovered, why this should not be so; nor why it can not be done, in a case like this, without violating any sensible or useful principle.

And although it was truly said, and for obvious reasons, that corporations could not be punished corporally, as traitors or felons, yet they may be, and have often been, subjected to fines and forfeitures, for malfeasance, and even to the loss of corporate life, by the revocation of their charters. And now it seems to be generally admitted, that they are civilly responsible, in their corporate capacities, for all torts which work injury to others, whether acts of omission or commission; for negligence merely, and for direct violence. *Yarborough* v. *Bank of Eng.*, 16 East, 6. *Beach* v. *Fulton*

*Bank*, 7 Cowen, 436. *Foster* v. *Essex Bank*, 17 Mass., 503. *Riddle* v. *Proprietors of Locks and Canals*, 7 *id.*, 187. *Chesnut Hill Turnpike* v. *Rutter*, 4 Sarg. & Rawle, 16. 4 Hammond, 500, 514. 10 Ohio Rep., 159. *Dater* v. *Troy Turnpike Co.*, 2 Hill, 630. 23 Pick., 139. 2 Bl. Com., 476. Ang. & Ames, 392. 2 Kent Com., 290. 1 Sw. Dig., 75. 15 Ohio Rep., 476. 18 *id.*, 229. And indeed, no actions are now more frequent, in our courts, than such as are brought against corporations, for torts, either in case or trespass. *Hooker* v. *New Haven & Northampton Canal Co.*, 14 Conn., 146, and the cases there cited, and many others since reported. In a late case in England, it has been adjudged, adversely to former opinions, that an action of assault and battery, may be sustained against a corporation. *Eastern Counties Railway Co.* v. *Brooks*, 2 Eng. Law & Equity, 406. And it was decided long ago, that a corporation was liable to an action, for a false return to a writ of *mandamus*, alleged to have been made falsely and *maliciously*. 16 East, 8. 14 Eng. Com. Law, 159. 3 Mees. & Wels. 244. Ang. & Ames, ch. 10, sec. 9.

In all the cases, wherein it has been holden, that corporations may be subjected to civil liabilities for torts, the acts charged as such, have been the acts of their constituted authorities, either the directors, or agents, or servants, employed by them. We do not intend here to discuss or decide the frequently suggested question, how far, or when a principal, whether an individual person, or a corporation, becomes responsible for the wilful or malicious act of his servant or agent, as distinguished from his mere negligence, although it has been brought into the argument of this case, because we do not admit, that the present case falls within the operation of the rule of law on this subject, even as the defendants claim it.

The truth is, the action complained of, as vexatious, was instituted by the *bank*, in the name of the bank, and, as

should be presumed, in just the same way and by the same agencies and means, as all other suits by these institutions are commenced and prosecuted, and nothing appears here, showing any different procedure than is usual, in actions by corporations. The action was brought, for the sole benefit of the bank, for the recovery of money to which the bank was entitled, if anybody, and for an injury sustained by the bank, in its corporate capacity. The bank, by its charter, and the general laws, had power to sue for such a cause of action; and what seems to us yet more conclusive, is, that if this suit was originated by the misconduct of directors, or any officer of the company, it has never been repudiated, and may, by the acquiescence of the bank, be considered as sanctioned by it. Ang. & Ames, ch. 10, sec. 9. No act of agency appears here, which does not appear in all suits brought by corporations, and nothing to show, that any individuals are, or ought to be, made responsible for the institution and prosecution of the groundless suit, as distinct from the corporation itself.

The doctrine, that principals are not responsible for the wilful misconduct of their agents, as seems to have been sanctioned in the cases of *McManus* v. *Cricket*, 1 East, 106; *Wright* v. *Wilcox*, 19 Wend., 343; *Vanderbilt* v. *Richmond Turnpike Co.*, 2 Comstock, 470; but denied by Chief Justice Reeve, in his Domestic Relations, 357, we think has never been applied to such a case as this, but only to the acts of agents or servants, properly so called; or such as act under instructions and a delegated authority,—persons whose duty it is to obey, not to control; as attorneys, cashiers, or others employed by the corporation. The president and directors of a bank, instead of being mere servants, are really the controlling power of the corporation,—the representatives, standing and acting in the place of the interested parties. Indeed, they are the mind and soul of the body politic and corporate, and constitute its thinking and acting

capacity. In the case of *Burrell* v. *The Nahant Bank*, 2 Met., 163, Shaw, C. J., expresses and defines the true rule of appreciating the character and powers of bank directors. He says : " We think the exception takes much too limited and strict a view of the powers of bank directors. A board of directors is a body recognized by law. By the laws of these corporations, and by the usage, so general and uniform, as to be regarded as a part of the law of the land, they have the general superintendence and active management of all the concerns of the bank, and constitute, to all purposes of dealing with others, *the corporation.* We think they do not exercise a delegated authority, in the sense to which the rule applies to agents and attorneys," &c. The same principle is very distinctly recognized, in the cases of *Bank Commissioners* v. *Bank of Buffalo*, 6 Paige's Ch., 502, and *Life and Fire Ins. Co.* v. *Mechanics' Fire Ins. Co.*, 7 Wend., 31. It has been said, that the stockholders constitute the corporation. It may be so, to the extent to which they have the power to act,—and this is only in the choice of directors, and no more. Beyond this, they can only be considered, as the persons for whose ultimate individual interests the corporation acts. The directors derive all their power and authority from the charter and laws, and none from the stockholders.

But the fear is expressed, that, by thus considering and treating the character and acts of the directors of a bank or other corporation, the stockholders are subject to loss, without fault of their own. This may to some extent, be true ; but the protection of the law in this matter, is not to be confined to stockholders ; the public and strangers have rights also. The stockholders are volunteers, and they have consented to assume the risk of the faithful or unfaithful management of the corporation. If, in this case, one of two innocent persons or classes is to suffer, which should it be,—that one which is brought in to suffer loss, without its

Goodspeed *v*. The East Haddam Bank.

consent or power to prevent it, or the one which has created the power and selected the persons to enforce it ?

But, after all, the objection to the remedy of this plaintiff against the bank, in its corporate capacity, is not so much, that, as a corporation, it can not be made responsible for torts committed by its directors, as that it can not be subjected for that species of tort, which essentially consists in motive and intention. The claim is, that, as a corporation is ideal only, it can not act from malice, and therefore, can not commence and prosecute a malicious or vexatious suit. This syllogism, or reasoning, might have been very satisfactory to the school-men of former days ; more so, we think, than to the jurist who seeks to discover a reasonable and appropriate remedy for every wrong. To say that a corporation can not have motives, and act from motives, is to deny the evidence of our senses, when we see them thus acting, and effecting thereby results of the greatest importance, every day. And if they can have any motive, they can have a bad one,—they can intend to do evil, as well as to do good. If the act done is a corporate one, so must the motive and intention be. In the present case, to say, that the vexatious suit, as it is called, was instituted, prosecuted, and subsequently sanctioned, by the bank, in the usual modes of its action ; and still to claim, that, although the acts were those of the bank, the intention was only that of the individual directors, is a distinction too refined, we think, for practical application.

It is asked, how can the malice of a corporation be proved ? It must be proved, it is said, as well as alleged, in an action for a malicious prosecution, as a distinct and essential fact ; and the declarations and admissions of individual members, whether directors or others, are not admissible to prove it. True, malice must be proved, and, as we suppose, very much in the same manner as it is proved in other cases, of a similar nature, against individual persons. The want of probable cause of action is proof of malice, and for aught we

know, also, the records of the bank may show it. It is enough to say, in this, as in all other cases, that if the plaintiff can not, in some legitimate way, prove the malice he has alleged, he can not recover; but we have no right to assume it as a legal principle, that it can not be proved. We do not know that it has ever been adjudged, that a corporation is civilly responsible for a libel. But, among the great variety and objects of these institutions, it is probable that the newspaper press has come in for its share of the privileges supposed to be enjoyed under corporate powers. Proof of the falsehood of slanderous charges, is evidence of malice, and which must, as in this case, be proved. But, would it be endured, that an association, incorporated for the purpose suggested, could, with impunity, assail the character and break down the peace and happiness of the good and virtuous, and the law afford no remedy, except by a resort to insolvent and irresponsible type-setters, and for no better reason, than that a corporation is only an ideal something, of which malice or intention can not be predicated? And if, as we have suggested, the directors are, for all practical purposes, *the corporation* itself, acting, at least, as its representatives, we can see no greater difficulty in proving their motives good or bad, than in thus proving the motives of other associated or conspiring bodies. We are sure, that this objection of the defendants, was not discovered, or was not regarded as suficient, nor the difficulty of proving malice upon a corporation, felt, when the case of *Merills* v. *The Tariff Manufacturing Co.*, 10 Conn. R., 384, was tried at the circuit, and discussed and decided by this court. That was an action against a corporation, for a malicious injury, and the sole question in this court was, whether, by reason of the malicious intent, the company was liable for aggravated or vindictive damages; and it was holden to be thus liable, in a very elaborate opinion, drawn up, and strongly expressed, by Huntington, J.

The interests of the community, and the policy of the law

demand, that corporations should be divested of every feature of a fictitious character, which shall exempt them from the ordinary liabilities of natural persons, for acts and injuries committed by them and for them. Their immunities for wrongs are no greater than can be claimed by others, and they are entitled to an equal protection, for all their rights and privileges, and no more.

For the reasons suggested, a majority of the court is of opinion, that the nonsuit granted by the superior court, should be set aside, and a new trial granted.

In this opinion, WAITE, J., concurred.

ELLSWORTH, J. I do not feel quite satisfied, that the plaintiff can recover against the defendants, for a malicious suit brought, in fact, by the directors of the bank. Certainly, no such action has been found in the books, though I admit there are analogous cases which show, that courts have gone very far in subjecting corporations for wrongs, by their agents, but I think there are none, going to the extent now claimed.

An indispensable requisite, in an action for a malicious suit, is, *malice,*—malice in *fact,*—a wicked criminal purpose. An unsuccessful suit is not sufficient. It must have originated in malice ; and this idea of *actual,* as contradistinguished from legal, malice, is, in my judgment, deserving of the highest consideration. It gives character to the action. The language of Greenleaf, 2 Greenl. Ev., 367, is, " To sustain this averment, (malice,) the charge must be shown to have been wilfully false." Now I ask, in view of this essential requisite, if any such malicious intent can be said to belong to a body of stockholders, (the corporation,) whose affairs are conducted by their agents, under the provisions of the charter of the company, and who, themselves, are in no way or manner *really* implicated in the supposed malicious intent ? Again I ask, whose malice is the ground of the ac-

Goodspeed *v.* The East Haddam Bank.

tion? not the malice of the president and cashier,—not that of the directors; this is not even admissible in proof against the company. Whose malice then? certainly not that of the ideal corporation; for this is a mere fictitious entity, and can not entertain malice. It must never be forgotten, that malice, as already said, is the very *ground* and gist of the action, and no case has been read to us, of a recovery against a corporation, where there was not a perfect cause of action, independent of any malicious intention. Doubtless the directors may be guilty of malice, and of a malicious injury; but to proceed further, and subject stockholders, for their malice, is quite another question.

It is likewise to be kept in mind, that this action does not belong to that class of actions against corporations, or other principals, for injuries sustained, through a false confidence reposed by strangers in the supposed authority of agents. This action is for an original unauthorized wrong of the directors, and is in no way the result of any false confidence. It is a mere malicious contest between the directors themselves. The stockholders may well say: We can not be involved in this malicious contest. We entertain no malice against Mr. Goodspeed, and no one can entertain it for us.

I think it has been incorrectly assumed, by counsel, that the malicious suit was brought by the East Haddam Bank. It was, in fact, brought by the major vote of the directors. *They* made use of the company name, for *their own malicious* purpose, while they were only intrusted with the powers delegated, for a lawful and laudable purpose. The company do not at all admit, that they are represented in this instance,—no more than they would, had the directors voted that the cashier should inflict personal chastisement upon Mr. Goodspeed, wherever he could find him.

But if this objection is unsound and capable of being surmounted, there is still another, by no means to be overlooked. The act of the defendants is conceded to be will-

ful and designed ; indeed, this is the very ground of the action—*a malicious wrong*. But no principle of law is better settled, than that the principal is not liable for the intentional torts of the agent. For his negligence he is liable, but nothing more. To go beyond this, and make him liable for criminal conduct, though in a civil form, would jeopardize the safety of all employers, whether corporations or others, or would prevent the employment of all agents, because of the great responsibility. It may be politic, to hold principals to greater carefulness on the part of their agents, or servants, but this is all that has hitherto been found expedient or necessary. If now this admitted rule of law, as a general rule, is to be applied to this case, it puts an end to the controversy at once ; for a more palpable or willful wrong, or tortious act, can not be imagined, than the officers of a bank maliciously and without cause, using the corporate name to oppress and destroy a fellow-director. Of course, I do not say this is so, in this instance ; but the plaintiff makes this assumption, in order to recover on this declaration. That the above principle of law *is* applicable to corporations, as well as to other principals, who employ agents, is most learnedly argued and fully decided in the court of appeals of the state of New York. *Vanderbilt* v. *The Richmond Turnpike Co.*, 2 Com., 481, which was the case of an intentional collision of steamboats in the harbor of New York.

Suppose, in the late catastrophe at Norwalk, the engineer had designedly run the train into the creek, to sink a steamboat, passing underneath ; would the company have been liable to the owners of the steamboat ? True, they would have been liable to the passengers in the cars, because they undertook to carry them safely to the end of the route ; but there is no such undertaking, as to strangers. Suppose the engineer had intentionally run over a man on the road, to break his bones ; would the company be liable ? Suppose the president and directors had themselves conducted the

Goodspeed *v*. The East Haddam Bank.

engine with the same intention, and had done the same injury, would the company be liable? Is a town liable for a malicious suit by its selectmen? or a savings bank, for the malicious conduct of its trustees? I answer, in all these cases, no.

It is asked, will you not hold corporations to the same rule of justice and law, as you do all others? I answer, yes, where the cases are parallel. Now, this interrogatory assumes two things, which are not entirely clear or conceded, *viz.*, that you can pass by the only actual malice in the case, and assume malice in the stockholders, or corporation, who are avowedly ignorant and innocent; and further, that the principal is liable for the willful wrongs perpetrated by his agent. Now, I go for the same rule to all, and therefore, I hold, that those who, in fact, do the wrong, must answer for it. If a different view of the case is taken, and corporations are held liable for the malicious acts of the directors, and other inferior agents, I insist, that a different rule is made to apply to them from others, and that the property of stockholders, vested under the exact limits and provisions of the charter, will be subjected to very great and alarming hazards.

These are, briefly, my views, expressed with no little distrust, since some of my brethren feel well satisfied the plaintiff is entitled to recover.

In this opinion, HINMAN, J., concurred. STORRS, J., having tried the cause in the court below, was disqualified.

Nonsuit set aside, and new trial to be granted.