[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE
Two issues are raised by the plaintiff's motion to strike defendants' counterclaims. Firstly, to what extent may acts of attorneys "of a purely legal nature" committed subsequent to the commencement of debt collection litigation constitute violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Secondly, may a defendant assert a counterclaim for vexations suit pursuant to General Statutes 52-568 based on the commencement and prosecution of the plaintiff's pending claim.
 I.
The plaintiff brought a "small claims" action in superior court seeking damages for medical services it allegedly rendered. The defendants successfully moved to transfer the action to the regular docket of the superior court. Thereafter, the defendants filed an answer, a special defense of payment, and "setoffs and counterclaims."
The first count of defendants' setoffs and counterclaims alleges that on April 11, 12, 17 and 18, 1991, the plaintiff's attorneys communicated with the defendants. Those communications allegedly violated 15 U.S.C. § 1692c(a)(3), 1692c(b), 1692d1692e(11) and 1692g(a), because the communications allegedly did not contain statements required by the Act and because one communication was made to the defendants' place of employment. The plaintiff's attorneys allegedly were "acting within the normal scope of their agency to collect a debt alleged to be due and owing for a hospital bill".
The plaintiff has moved to strike the defendants' counterclaims. This motion wholly fails to comply with Practice Book 154. That section provides: "Each motion to strike raising any of the claims of legal insufficiency enumerated in [152] shall separately set forth each such claim of insufficiency and shall distinctly specify the reason or reasons for each such claimed insufficiency." Just as courts in earlier days discountenanced general demurrers: Hamden v. Mervin, 54 Conn. 418,423-424 (1887); so too our courts since 1978 have inveighed against motions to strike which fail to comply with Practice Book 154. See e.g. Connecticut State Oil Co. v. Carbone, 36 Conn. Sup. 181,182 (1979). "A general statement contained in a motion to strike that the complainant does not state a claim upon which relief can be granted is usually insufficient to comply with CT Page 4379 Practice Book 154. Morris v. Hartford Courant Co., 200 Conn. 676,683 5, 513 A.2d 66 (1986)." Rowe v. Godou, 12 Conn. App. 538,541 (1987), affirmed in relevant part, reversed on other grounds, 209 Conn. 273 (1988). The requirement of 154 is not merely a technical pleading nicety since the court should not, in ruling on a motion to strike, "consider grounds other than those specified in the motion." Shaelmore Development Corporation v. Commissioners, 164 Conn. 548, 551 (1973). "Nevertheless, a motion to strike which is unspecific, but which adequately submits the material issue to the court . . . is sufficient to comply with Practice Book 154." Rowe v. Godou, supra, 12 Conn. App. at 541-542. Unlike the motion in Rowe which at least alleged that the plaintiff's action was "`barred by statute'"; id., 542; the motion here simply recites that the plaintiff moves to strike the counterclaims "pursuant to Practice Book Section 152(1) and 154. The plaintiff attaches hereto a memorandum in support of their [sic] motion to strike." "[T]he requirement of Practice Book 155 that a motion to strike be accompanied by an appropriate memorandum of law citing the legal authorities upon which the motion relies does not dispense with requirement of 154 that the reasons for the claimed pleading deficiency be specified in the motion itself. Morris v. Hartford Courant Co., 200 Conn. 676,683, 5, 513 A.2d 66 (1986); King v. Board of Education, 195 Conn. 90,94, 4, 486 A.2d 1111 (1985)." Rowe v. Godou, supra,12 Conn. App. at 542 n. 5.
 II.
Although not required to do so, the court has culled from the plaintiff's brief in support of its motion, and from the oral argument on the motion, two grounds on which the motion is based. See Rowe v. Godou, supra, 207 Conn. at 275. The first ground is: "Only collection activities, not legal activities, are covered under the act. The act does not apply to attorneys when performing tasks of a legal nature." In support of this argument the plaintiff cites National Union Fire Insurance Co. of Pittsburgh, Pa. v. Hartel, 741 F. Sup. 1139 (S.D.N.Y. 1990).
In National Union Fire Ins. Co. v. Hartel, supra, the named plaintiff had sued the defendant in a prior action on an indemnity agreement executed in connection with a bond which guaranteed the defendant's promissory notes. The plaintiff also had sued the defendant as subrogee of those notes which it had paid when the defendant had defaulted. The notes and bond were part of the financing arrangement by which the defendant had invested in a tax shelter limited partnership. An issue had arisen as to whether the filing of that prior action violated the venue provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692i(a)(2). A declaratory judgment action was commenced in the name of the plaintiff and its attorneys to declare that no violation of the CT Page 4380 Act had occurred. The district court so found. Firstly, the court found that the prior action did not involve the collection of a "debt" as defined by 15 U.S.C. § 1692a(5) since the promissory notes did not relate to an "alleged obligation of a consumer." Id., 1140. Secondly, the court found that the law firm which represented the plaintiff and had filed that prior action was not a "debt collector" within the definition of the Act; 15 U.S.C. § 1692a(b); "since it has engaged in activities only of a purely legal nature in seeking reimbursement for National Union." Id., 1141. In support of this proposition, the district court cited the following:
 See H.R. Rep. No. 99-405, 99th Cong., 1st Sess., 1-7, reprinted in 1986 U.S. Code Cong. Admin. News 1752, 1753 — 57 (reflects purpose, in amending FDCPA to delete provision exempting "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client", of bringing under the FDCPA's coverage attorneys engaging in activities traditionally carried on by debt collectors); Hearing on H.R. 237 Before the Subcomm. on Consumer Affairs and Coinage of the House Comm. on Banking, Finance and Urban Affairs, 99th Cong., 1st Sess., 2-3
(1985) (Rep. Annunzio, sponsor of Amendment, states "The removal of the attorney exemption will not interfere with the practice of law by the nation's attorneys. It will not prevent them from representing the interests of their clients"); 132 Cong. Rec. H. 10031 (1986) (after enactment of Amendment, Rep. Annunzio states "Only collection activities, not legal activities, are covered by the Act . . . The act applies to attorneys when they are collecting debts, not when they are performing tasks of a legal nature . . . The act only regulates the conduct of debt collectors, it does not prevent creditors, through their attorneys, from pursuing any legal remedies available to them"); 53 Fed. Reg. 50,097, 50,100 (1988) (Staff of Federal Trade Commission, the agency charged with administrative enforcement of the Act, states that attorneys who engage in traditional debt collection activities are debt collectors under the FDCPA, but attorneys whose practices are limited to legal activities are not); compare Crossley v. Lieberman, 868 F.2d 566, 569-70 (3rd Cir. 1989) (attorney who, while representing creditor loan company, sends debtor threatening letter seeking payment of debt to CT Page 4381 him, and who also regularly represents several other loan companies in collection activities, held to be debt collector under the FDCPA), aff'g. 90 B.R. 682 (E.D. Pa. 1988).
Id., 1141. See also Firemen's Ins. Co. of Newark, N.J. v. Keating, 753 F. Sup. 1137, 1142-1143 (S.D.N.Y. 1990), indicating that attorneys "`whose practice is limited to legal activities are not covered by the Act.'"
The only authorities cited in Hartel or Keating which support an exemption for attorneys "engaged in activities only of a purely legal nature" are (1) the post-passage remarks of Rep. Annunzio and (2) Statements of General Policy or Interpretation Staff Commentary of the staff of the PTC, the agency charged with enforcement of the FDCPA.
With respect to the post-passage remarks of Rep. Annunzio, it is first to be emphasized that "[r]eliance on legislative history in divining the intent of Congress is, as has often been observed, a step to be taken cautiously." Piper v. Cris-Craft Industries, 430 U.S. 1, 26 (1977). "[O]rdinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislation. Chrysler Corp. v. Brown, 441 U.S. 281, 311 (1979)." Consumer Product Safety Commission v. GTE Sylvania, 447 U.S. 102, 118 (1980). "Post enactment legislative history is generally not to be accorded the same weight as legislative history occurring in connection with the enactment of the statutory language under immediate consideration." Stauffer Chemical Co. v. B.P.A., 647 F.2d 1075,1079 (10th Cir. 1981) (footnote omitted)"; see D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1483 (7th Cir. 1985) ("subsequent legislative history does not have the same convincing weight as contemporaneous legislative history."); Sperling v. United States, 515 F.2d 465, 480-81 (3rd Cir. 1975); Hackley v. Rodenbush, 520 F.2d 108, 146-148 (D.C. Cir. 1975).
The remarks of the FTC staff stand on somewhat different footing; such statements are entitled to due consideration. But "[a]lthough an agency's interpretation of the statute under which it operates is entitled to some deference, `this deference is constrained by [the court's] obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.' Teamsters v. Daniels, 439 U.S. 551, 566 n. 20 (1979)." Southern Community College v. Davis, 442 U.S. 397, 411 (1979).
Neither the language, purpose or history of the Act reflects an intent to create an elusive exemption for lawyers whose practice "is limited to legal activities" as opposed to those whose practice includes "collection activities." "Although the CT Page 4382 FDCPA, as originally enacted, specifically excluded attorneys from the definition of `debt collector,' it was amended in 1986 to delete the attorney exemption. Pub.L. 99-361, 100 Stat. 768,15 U.S.C. § 1692a(6)." Firemen's Ins. Co. of Newark, N.J. v. Keating, supra, 1142. The reason for the attorney exemption in the original Act was the belief "that attorneys ware only incidentally involved in debt collection activities." H.R. No. 405, 99th Cong.2d Sess. (1985), reprinted in 1986 U.S. Code Cong. Ad. News 1752, 1759. "In recommending passage of the FDCPA amendment, the House Committee on Banking, Finance, and Urban Affairs noted that as of 1985, approximately 5,200 attorneys were engaged in the business of debt collection, compared to approximately 4,500 `lay' debt debt collection firms. H. Rpt. 99-405, 99th Cong., 2d Sess. 2, reprinted in 1986 U.S. Code Cong. Admin. News 1752." Firemen's Ins. Co. of Newark, N.J. v. Keating, supra, 1142. That is, "more attorneys were engaged in the debt collection industry than non-attorney debt collectors. Additionally, to procure clients, many attorneys were advertising their exemption from the FDCPA as an advantage to creditors." Crossley v. Lieberman,868 F.2d 566, 569 (3d Cir. 1989) (footnote omitted). "The purpose of the amendment was thus to close a significant loophole, whereby attorneys engaging in traditional debt collection activities were able to avoid the FDCPA's precepts merely by virtue of the fact that they had, at some point, obtained a law degree. See H. Rpt. 99-405, 99th Cong.2d Sess. 1-7, reprinted in 1986 U.S. Code Cong. Admin. News at 1752-57." Firemen's Ins. Co. of Newark, N.J. v. Keating, supra.
The FDCPA governs the activities of debt collectors. With several exceptions not relevant to this case at this time, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 2692a(6) (emphasis added). Simply stated, if an attorney regularly engages in debt collection activities, that attorney is a "debt collector under the FDCPA and is subject to its provisions." Zartman v. Shapiro and Meinhold, 811 P.2d 409, 413
(Colo.App. 1990). This court holds that there is no additional, implied exemption for "attorneys when performing tasks of a legal nature" as claimed by the plaintiff. Ibid. To hold otherwise would be judicial subversion of the 1986 amendment to the FDCPA which removed the attorney-exemption, impaling the statutory definition of "debt collector" as it applies to lawyers on the slippery slope of the elusive distinction between "legal activities" or "tasks of a legal nature" on the one hand and collection activities on the other.
A motion to strike under Practice Book 152 is similar to a CT Page 4383 motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. DeLaurentis v. New Haven, 220 Conn. 225, 239-240
(1991). In ruling on such a motion the court is limited to the facts alleged in the complaint or, as here, in the counterclaim. Rowe v. Godou, supra, 209 Conn. at 278. The extent to which the plaintiff's attorneys engage in debt collection activities does not appear from the face of the counterclaim and, therefore, cannot be determined in the disposition of this motion. Ibid.
The gist of the plaintiff's claim, as narrowed during oral argument, is that the alleged activities of her attorneys are not proscribed by the FDCPA, not because they were committed by attorneys or because they are not otherwise acts within the ambit of the Act, but because they were committed after the commencement of the plaintiff's action. Whether the attorneys' acts were committed after the commencement of this lawsuit and whether that chronology would exclude those actions from the coverage of the FDCPA cannot be determined on this motion. "In Connecticut, an action is commenced on the date of service of the writ upon the defendant." Valley Cable Vision, Inc. v. Public Utilities Commission, 175 Conn. 30, 33 (1978).[1] The sheriff's return of service is prima facie evidence of the fact stated therein, although it may be contradicted and the facts shown to be otherwise. Cugno v. Kaelin, 138 Conn. 341, 342 (1951); Plonski v. Halloran, 36 Conn. Sup. 335, 336 (1980); Collins v. Scholz,34 Conn. Sup. 501, 502 (App.Sess. 1976); Bell Stanton, Inc. v. Langlin, 28 Conn. Sup. 359, 360 (1967); D'Ausilio v. Kroll, 5 Conn. Cir. 235, 237 (1960). However, on a motion to strike the court may not consider evidence. Nor may the court take judicial notice of the sheriff's return, even though it may generally take judicial notice of the contents of the file in the case before it. Nichols v. Nichols, 126 Conn. 614, 620-621 (1940). "Judicial notice takes the place of proof." Id., 621. Again, on a motion to strike, the court is limited to the facts alleged in the plaintiff's complaint." Rowe v. Godou, supra. 209 Conn. at 278.
Since the court cannot, on this motion, determine whether the plaintiff's attorneys are "debt collectors" as defined by15 U.S.C. § 1692a(6) nor whether the acts alleged were committed before or after the commencement of this action, the plaintiff's motion to strike the first count of the counterclaim is denied.
Notably, however, it is not the plaintiff's attorneys who are parties to this suit, and against whom the defendants' counterclaim is directed, but the plaintiff itself.[2] Yet, "the attorney-client relationship is one of agency." Kubeck v. Foremost Foods Co., 190 Conn. 667, 673 n. 6 (1983). In general, the acts of an agent are ascribable or chargeable to the principal. Connecticut Air Services, Inc. v. Danbury Aviation Commission, 211 Conn. 690, 696 (1989); see 7 Am.Jur.2d, Attorneys CT Page 4384 at Law, 129; 3 Am.Jur.2d, Agency, 270, 280. The agent is generally not a necessary party of an action against a principal. "A plaintiff has the right to sue either agent or principal, or both, or either master or servant, or both." Beach v. Milford Ice Co., 87 Conn. 528, 536 (1913).
This court has stated, in its memorandum of decision denying defendants' motion to cite in plaintiff's attorneys, that the defendants have not properly pleaded that the plaintiff is liable for its attorneys' alleged violations of the FDCPA because (1) the Act itself does not impose liability on a creditor for an attorney's violations and (2) the sui generis nature of the attorney-client agency relationship requires more than a general allegation that an attorney acted within the scope of his agency or employment in order to impose liability on a client for its lawyers violation of an Act such as FDCPA. However, the plaintiff's motion does not challenge the counterclaim on the basis that the plaintiff-creditor may not be charged with its lawyers' alleged FDCPA violations. Accordingly, the court does not reach that issue. The plaintiff is granted leave to file a second motion to strike the first count of the defendants' counterclaim; cf. Practice Book 113; Sabino v. Ruffolo, 19 Conn. App. 402,404-405, 541 A.2d 523 (1989), or the plaintiff may file a motion for summary judgment to resolve this issue, Practice Book 378 et seq.
 III.
The second count of the defendants' counterclaim alleges that the plaintiff's claim is a vexatious suit in violation of Conn. Gen. Stat. 52-568. The plaintiff also has moved to strike that count because "[t]his suit is still pending and has not reached final adjudication" and because the defendants have failed to allege that the plaintiff's action has terminated in their favor.
The Connecticut Supreme Court has repeatedly "held that a claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor. Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 982 (1978); Calvo v. Bartolotta, 112 Conn. 396, 397, 152 A. 311 (1930); Schaefer v. O.K. Tool Co., 110 Conn. 528, 532, 148 A. 330 (1930)." Blake v. Levy,191 Conn. 257, 263 (1983). "In both the common law cause of action and the statutory action under 52-568 the same principles apply, including the requirement that the original action must terminate in some way favorable to the defendant. Goodspeed v. East Haddam Bank, 22 Conn. 530, 535 [1853]; Sherman v. Duncan, [14 Conn. Sup. 293], 294 [1946]. Under these well-established concepts it is clear that the defendants do not have a cause of action CT Page 4385 against the plaintiff at this time for vexatious suit, and they cannot have a claim until they prevail in the underlying action." Csigi v. Teraglia, 2 Conn. L.Rptr. 811, 812 (Superior Court, Judicial District of Ansonia-Milford, No. 032477) (1990) (Fuller, J.).
The defendants urge the court to follow Hydro Air of Connecticut, Inc. v. Versa Technologies, Inc., 99 F.R.D. 111 (D. Conn. 1983), in which the federal district court "as a matter of judicial economy" allowed a defendant to raise a claim of vexatious suit by way of counterclaim. The court in Hydro Air cited as authority for its decision Fed.R.Civ.Proc. 54(b) and Sonnichsen v. Streeter, 4 Conn. Cir. 659, 666-667, 239 A.2d 63 (1967), in which the trial court adjudicated a claim of vexatious suit as a counterclaim. The defendants point out that Hydro Air was subsequently cited by the United States Supreme Court. In the course of its opinion in Connecticut v. Doehr, ___ U.S. ___,111 S.Ct. 2105, 2118, 115 L.Ed.2d 1 (1991), in which it held that Connecticut's statutes governing the issuance of prejudgment attachments denied due process of law, that Court stated: "At best a defendant must await a decision on the merits of the plaintiff's complaint, even assuming that a 52-568 (a)(1) action may be brought as a counterclaim. Hydro Air of Connecticut, Inc. v. Versa Technologies, Inc., 99 F.R.D. 111, 113 (Conn. 1983)." (Emphasis added).
The elements of the state statutory offense of vexatious suit is solely a matter of state substantive law. Whether such a claim may be asserted as a counterclaim is a matter of state procedural law. To the extent that Hydro Air purported to articulate a rule of state substantive law, this court is not bound to follow that decision. "[T]he state is the final arbiter of its own laws." State v. Menillo, 171 Conn. 141, 147 (1976). For the same reason, this court is not bound by the assumption in Connecticut v. Doehr, supra, which does not even rise to the level of obiter dicta. Cf. Kastigar v. United States, 406 U.S. 441,454-455, 92 S.Ct. 1653, 1662, 32 L.Ed.2d 212 (1972). To the extent that Hydro Air was based on that federal court's considerations of "judicial economy" as expressed in the Federal Rules, it is settled that, while Connecticut courts also are especially concerned about matters of judicial economy "in this day of suffocating dockets"; Fengler v. Northwest Connecticut Homes, Inc., 215 Conn. 286, 292 (1990) the Federal Rules of Civil Procedures "can only have application to proceedings in the Courts of the United States and cannot be applied to the practice or procedure in State Courts, nor affect the rights of parties in such Courts." Rader v. Baltimore O.R. Co., 108 F.2d 980, 986
(7th Cir. 1940), cert. denied, 309 U.S. 682, 60 S.Ct. 722,84 L.Ed. 1026 (1940); see Fed.R.Civ.Proc. Rule 1; State v. Browning,206 Ark. 791, 178 S.W.2d 77, 78 (1944). CT Page 4386
To the extent that the court in Hydro Air relied on the Circuit Court case of Sonnichsen v. Streeter, supra, as authority for allowing an action for vexatious suit to be brought as a counterclaim, it need only be observed, firstly, that this court, the Superior Court, "is a constitutional court of unlimited jurisdiction"; State v. Stallings, 154 Conn. 272, 278 (1966), overruled on other grounds, State v. DeFreitas, 179 Conn. 431, 449
(1980): and is not bound by the precedent of the former statutory Circuit Court; State v. Hyatt, 9 Conn. App. 426, 430 (1987); especially where that precedent conflicts with a holding of our Supreme Court.
"Concerns over judicial economy" expressed by the court in Hydro Air "are misplaced. Substantially different facts from the underlying action must be proved in a vexatious litigation claim, and they require totally different evidence, so there is no real time saving by tying them together. . . . Allowing a vexatious suit action to be brought by a counterclaim would not encourage judicial economy, but in fact would do the opposite." Csigi v. Tenaglia, supra.
"The opinions of the Supreme Court of Connecticut are binding upon the Superior Court, and the rule of the [Blake v. Levy] case is clear and explicit. Until is is reversed, changed or modified by the Supreme Court, this court must follow it." Montes v. Hartford, 26 Conn. Sup. 441, 442-443 (1966). Because the second count of the defendants' counterclaim does not, indeed cannot, allege that the plaintiff's action has terminated in the defendants' favor, that count does not set forth a legally sufficient cause of action for vexatious suit under Conn. Gen. Stat.52-568.
The plaintiff's motion to strike the first count of the defendants' counterclaim is denied. The plaintiff's motion to strike the second count of that counterclaim is granted.
BRUCE L. LEVIN, JUDGE