**Mary CROSSLEY**

v.

**Arnold LIEBERMAN.**

**Misc. No. 88–0084.**

United States District Court,
E.D. Pennsylvania.

July 13, 1988.

David A. Searles, Community Legal Services, Philadelphia, Pa., for plaintiff.

Anne Matchulet, Swartz, Cambell and Detweiler, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

I have before me RECOMMENDED OPINION CONTAINING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW submitted to me by Order dated February 12, 1988 of United States Bankruptcy Judge David A. Scholl in Bankruptcy No. 87–02394S, Adversary No. 87–0569S 90 BR 669. I have also before me DEFENDANT ARNOLD R. LIEBERMAN'S OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (filed March 4, 1988), MEMORANDUM IN RESPONSE TO DEFENDANT'S OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (filed by plaintiff on March 21, 1988), and SUPPLEMENTAL BRIEF OF DEFENDANT ARNOLD R. LIEBERMAN (filed April 20, 1988).

This case is a non-core adversary proceeding related to a proceeding under Chapter 7 of the Bankruptcy Act, 11 U.S.C. § 701 et seq. Federal jurisdiction is base on an alleged violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and 28 U.S.C. § 1334. In addition to the federal FDCPA claim, there is a state claim under the Pennsylvania Debt Collection Trade Prac-

tices Regulations, 37 PA CODE § 303.1 et seq., as enforced through the Pennsylvania state Uniform Trade Practices and Consumer Protection Law, Pa.Stat.Ann. tit. 73, § 201–1 et seq. (collectively "DCTPR"). As a noncore adversary proceeding, it was heard by the bankruptcy judge pursuant to 28 U.S.C. § 157(c)(1), and has been presented to me for final order.

Pursuant to 28 U.S.C. § 157(c)(1) (West Supp.1988) and Bankr. Rule 9033(d), 11 U.S.C.A., I must review de novo those matters to which any party has timely and specifically objected. De novo review requires me to make an independent judgment of the issues. Matter of Campbell, 812 F.2d 1465, 1467 (4th Cir.1987); Moody v. Amoco Oil Co., 734 F.2d 1200, 1210 (7th Cir.1984). In doing so, I have examined the entire record in this matter.

The debtor, Mary Crossley, is a widow aged 70 years. She filed an action to adjust her debts under Chapter 13 of the Bankruptcy Act, 11 U.S.C. § 1301 et seq., on May 15, 1987. The case was converted to a Chapter 7 liquidation proceeding on December 4, 1987. This adversary proceeding was brought on June 12, 1987, with the filing of a complaint. When the defendant failed to answer the complaint, a default was entered on July 24, 1987, and a hearing on the issue of damages only was scheduled on August 12, 1987. Thereafter, plaintiff filed a motion for a default judgment. The defendant suddenly sprang into action, opposed this motion and also filed a proposed Answer. The bankruptcy judge ultimately vacated the default and, in an Order of September 15, 1987, directed the defendant to answer the complaint and outstanding discovery prior to a trial scheduled on October 13, 1987.

The trial was continued to November 10, 1987, so defendant could take plaintiff's deposition. This deposition was taken on October 30, 1987 in plaintiff's home. It was taken there because plaintiff claimed she could not, for medical reasons, venture out for the deposition. Just prior to trial, plaintiff moved to admit the deposition transcript into the record in lieu of her live testimony, contending that, for medical rea-

sons, she could not attend trial. On November 10, 1987, the bankruptcy judge granted that motion, over defendant's objection, subject to the defendant's right to take a supplemental deposition of plaintiff on or before November 30, 1987. The remainder of the trial was scheduled for December 15, 1987.

On the latter date, the defendant, to the surprise of plaintiff's counsel, failed to appear for trial. The bankruptcy judge therefore continued the trial until January 6, 1988, allowing either party to subpoena the defendant to appear. After initially agreeing to produce the defendant, his counsel, in a letter dispatched just prior to New Year's weekend, withdrew the offer. Plaintiff's counsel thereafter made unsuccessful attempts to deliver a subpoena to the defendant. On January 6, 1988, the defendant again failed to appear. At that time, in lieu of the bankruptcy court's offer to continue the matter again and direct the defendant to appear, plaintiff's counsel offered into evidence certain responses to discovery and, as Exhibit P–3, a portion of the transcript in *Clara Littles v. Lieberman,* Bankruptcy No. 87–00092S, Adversary No. 87–02394S, Misc. No. 88–0083. This case involved similar facts, and the testimony was offered in the absence of defendant to provide evidence concerning issues common to both. Also offered, as Exhibit P–7, was a certified copy of a listing of all actions filed by the defendant in the Court of Common Pleas of Philadelphia County from June 1, 1986, through December 30, 1987. Exhibits P–3 and P–7 were admitted over the defendant's objection. Defendant, in his objection filed March 3, 1988, did not object to admission of Exhibit P–3, and I therefore consider an objection to that exhibit to be waived. He did continue his objection to Exhibit P–7, and I deal with that below in connection with the discussion of Finding of Fact No. 7 (Proposed Finding of Fact No. 8).

The bankruptcy judge, after making his proposed findings of fact and conclusions of law, recommended judgment in favor of plaintiff in the amount of $500.00. For the reasons given below, I am adopting modified findings of fact and conclusions of law, and am entering judgment in favor of plaintiff in the amount of TWO THOUSAND ($2,000.00) DOLLARS.

■ Before proceeding to my findings of fact and conclusions of law, I want to lay to rest the question of the timeliness of defendant's objections to the proposed findings. The notice of the Clerk of Court and the Order of 25 January 1985 conflict with Bankr. Rule 9033(b). I find that Rule 9033(b) governs. However, because of the confusion created by this court's own order, and because it is the policy of this Circuit to try cases on their merits, not narrow technicalities, I will accept defendant's objections and plaintiff's memorandum in response as being timely filed.

My Findings of Fact are:

1. In August, 1986, Mary Crossley received a letter dated August 4, 1986, on the letterhead of and sent by defendant, reading as follows:

MARY CROSSLEY     PLAINTIFF: FLEET CDC
837 ALMOND ST     ACCOUNT # 2648672L
PHILA., PA.       AMOUNT DUE: 297.79

Dear Sir and Madam:

The above matter has been referred to me for collection. I am obligated to demand immediate payment of the full amount of the plaintiff's damages and costs as stated above.

Unless I receive payment in full within one week from the date of this letter, I will be compelled to proceed with suit against you. This can result in the listing of your property, either Real Estate or Personalty, for forced Sale by the Sheriff, after appropriate legal proceedings have been concluded.

Such action will result in additional expense to you, for the Court fees and Sheriff's costs.

Full payment should be in my hands within one week. You may telephone me for additional information.

Very truly yours,
/s/ Arnold R. Lieberman
ARNOLD R. LIEBERMAN, ESQ.

2. Plaintiff had not received any prior letters from defendant or Fleet Consumer Discount Company ("Fleet") concerning her account. The letter in question was sent on behalf of Fleet. At the time she received the letter, plaintiff was delinquent in payments on a loan owned by Fleet secured by a mortgage on her home.

3. Plaintiff is a 70–year old widow whose principal employment after graduation from high school was as a waitress. Plaintiff has a severe breathing problem which makes it very difficult for her to leave her home. She has not consulted a physician for several years.

4. The letter, which plaintiff interpreted as a threat "to sheriff sale [her] house", allegedly "scared the daylights out of [her]" and caused her to cry, not eat, not sleep, and reportedly lose twenty-five (25) pounds.

5. The letter caused plaintiff to believe that if she did not pay at once, her mortgage would be foreclosed and her house sold. Consequently, she terminated her part-time job with the School District of Philadelphia so that she could cash-in her contributions to the pension plan, amounting to something over $800.00.

6. The emotional distress occasioned by the letter, and the unnecessary termination of her part-time employment, caused plaintiff to suffer damages in the amount of $1,000.00.

7. In June and July of 1986, defendant filed thirty-two (32) cases in the Philadelphia County. Court of Common Pleas. Twenty-two (22) of these were mortgage foreclosures, two (2) were ejectments and seven (7) were general civil actions with financial institutions as plaintiffs. The remaining case was for Divorce A.V.M. Fleet was plaintiff in fourteen (14) of these actions.

■ As a prelude to my discussion of the bankruptcy judge's proposed findings of fact and conclusions of law, I will give my reasons for including plaintiff's deposition as evidence in this case. The deposition, taken at plaintiff's home on October 30, 1987, is crucial to a number of disputed findings of fact. Defendant has objected to the use of plaintiff's deposition on two grounds: first, that there is insufficient evidence of plaintiff's inability to attend the trial and, second, that the deposition was noticed for discovery, not for use as evidence, and consequently contained testimony which would otherwise be excluded.

The evidence of plaintiff's disability is found in her answers to defendant's questions on pages 15–17 of her deposition, to the effect that she is a heavy smoker and has trouble breathing. On re-direct, at pages 72 and 73, in answer to defendant's questions, we find that plaintiff did not have a car available for her use. In his post-trial brief, defendant argues that if plaintiff was able to go to her attorney's office, as described on pages 27 and 66 of her deposition, she should have been able to attend trial. Defendant fails to note that plaintiff's visit to counsel was in August, 1986, and the trial was in December, 1987. Her condition could well have deteriorated in that time. Defendant notes, on page 9 of his post-trial brief, that plaintiff has attended none of the proceedings in her bankruptcy matter, including several scheduled creditors' meetings. This would be strange behavior for an able bodied, retired party to litigation, and further tends to prove plaintiff's inability to testify in person at her trial.

Defendant argues that he is prejudiced because the deposition was noticed as defendant's discovery deposition, and consequently defendant did not have opportunity to cross-examine plaintiff. In fact, defendant enjoyed very broad latitude in questioning plaintiff. Defendant, for instance, spent a great deal of time eliciting testimony intended to prove that this 70–year old, somewhat confused widow, with a high school education and limited business experience, is a sophisticated debtor. The statements of plaintiff, which I have used in forming my findings of fact, were all in response to defendant's questions. Defendant was given opportunity to take a second deposition, and did not exercise that opportunity.

Finally, I am convinced that in a case such as this, heard by one judge and reviewed *de novo* by another, the probative value of plaintiff's deposition outweighs any possible prejudice to defendant.

I will now discuss my findings of fact and conclusions of law.

Finding of Fact No. 1 differs from the bankruptcy judge's Proposed Finding of

Fact No. 1 only in that it now contains the letter which had been incorporated by reference in Proposed Finding of Fact No. 1.

The bankruptcy judge's Proposed Finding of Fact No. 2 states:

"2. Crossley had not received any prior letters from the Defendant or Fleet concerning her account, although, at that time, Crossley was also delinquent in payments on a loan from Fleet secured by a mortgage on her home."

Although no objection was made to Proposed Finding of Fact No. 2, it has been rephrased to make clear that plaintiff had only one debt to Fleet, which was secured by a mortgage on her house, and which was the subject of the letter. The word "also" in the proposed finding of fact implied that there were two (2) loans with Fleet.

The bankruptcy judge's Proposed Finding of Fact No. 3 states:

"3. Crossley is a 70–year old widow whose principal employment, after graduation from high school, was as a waitress. Crossley has a severe breathing problem which renders it very difficult for her to leave her home, although she has shunned consultation of any physician about this problem for many years."

Defendant objected to the proposed finding on the ground that it was not supported by the evidence, and particularly to the use of the word "shunned". It has been rephrased to eliminate the word "shunned" and to change "many years" to "several years". Plaintiff's *physical* condition is relevant in this proceeding only in regard to the admissibility of her deposition. As discussed in connection with my ruling on the deposition's admissibility, I believe there is adequate evidence of her disability (given lack of contrary evidence), and adequate reason to accept the deposition into evidence.

The bankruptcy judge's Proposed Finding of Fact No. 4 is adopted as proposed.

The bankruptcy judge's Proposed Finding of Fact No. 5 states:

"5. Upon receipt of the letter, Crossley called one of the numbers on it and spoke to an unidentified man who advised her, in a kidding way, to sell her home and to either move to an apartment or become a bag lady, and stated that she didn't need a lawyer to resolve her problem."

Defendant objected to the proposed finding on the grounds that it is not supported by the evidence, that it finds a fact outside the compass of the complaint and that it did not form a basis for the recommended judgment. The proposed finding is based on plaintiff's deposition at pages 67 to 70, when she is being cross-examined by her lawyer. No evidence was offered in contradiction. While the fact that plaintiff called defendant's office is relevant to determining her state of mind after receiving the letter, the substance of the conversation is not relevant to any issue in this case. Consequently, I deleted this proposed finding.

The bankruptcy judge's Proposed Finding of Fact No. 6 states:

"6. Because she believed that it was necessary for her to cash in her pension benefits from her place of employment to pay Fleet to retain her home, Crossley terminated her most recent part-time employment in food service with the School District. She therefore attributes her differences with Fleet as responsible for her leaving her job."

Defendant objected to the proposed finding on the grounds that, being based on plaintiff's deposition, it was not supported by the evidence. He further objected that plaintiff was obligated to mitigate her damages, which she did not do. He finally objected that the proposed finding was not relevant, because plaintiff's differences were with Fleet, not with defendant.

Since I have accepted plaintiff's deposition, I hold that the proposed finding is supported by adequate evidence. I have rephrased the proposed finding and renumbered it as Finding of Fact No. 5. This finding reflects evidence that the letter tipped the balance in plaintiff's mind toward taking action on the Fleet debt. It does not matter whether her action was reasonable, but only that she reacted in this particular way. There appear to be

several things that plaintiff did in response to that letter. She borrowed money from a friend, she called the phone number on the letterhead, she quit her job to cash-in the pension benefits, and she went to see her lawyer. All of these tend to show the letter had effect. Should plaintiff have mitigated her damages? Of course. That she took the irrational course of quitting her job is mute testimony to her state of mind. We must remember we are dealing with a 70–year old woman, widowed since 1973, with an annual income of $5,160.00, with her independence threatened by a rising sea of insolvency. Because the letter had the effect that it did, it clearly constitutes a "difference" between plaintiff and defendant in addition to any differences plaintiff may have had with Fleet.

The bankruptcy judge's Proposed Finding of Fact No. 7 states:

"7. Given the cold record, we believe that Crossley did suffer some emotional trauma as a result of the letter, but that this trauma was not extensive. She thus suffered her actual damages valued at $100.00."

Defendant objected to this proposed finding as not being supported by the evidence. I agree. For reasons more fully set forth in my discussion of Conclusion of Law No. 6 (new number), I am increasing the actual damages to $1,000.00 in my Finding of Fact No. 6.

The bankruptcy judge's Proposed Finding of Fact No. 8 states:

"8. The Defendant filed one hundred and ninety-five (195) lawsuits in the Philadelphia Court of Common Pleas between June 1, 1986, and December 23, 1987, approximately one hundred and seventy-five (175) of which were mortgage foreclosure cases or other collection suits on behalf of loan companies."

■ Defendant objects to this proposed finding on the ground that Exhibit P–7, admitted into evidence over defendant's objections, should not have been admitted. Defendant also objected to showing cases filed after August 4, 1986, the date of the letter in question. I find that Exhibit P–7 was properly admitted. This court takes judicial notice of the practice of the Court of Common Pleas of Philadelphia County. The Prothonotary maintains a computerized docket. Included in the docket is the caption of each case. Mortgage foreclosure actions must be so listed in the caption pursuant to the local rules. Exhibit P–7 is nothing more or less than a certified computer run of the captions of cases filed by defendant in that court during a certain period.

Under Federal Rule of Evidence 1005, a public record, which this is, certified according to Federal Rule of Evidence 902(4), which this has been, is admissible. Such records are also admissible as exceptions to the hearsay rule under Federal Rule of Evidence 803(8). It might also be considered a record of a regularly conducted activity under Federal Rule of Evidence 803(6). In any event, I find plaintiff's Exhibit P–7 admissible and relevant to the issue of whether defendant is a "debt collector" within the meaning of FDCPA. I will discuss further the scope of the term "debt collector" in my discussion of Conclusion of Law No. 2.

I agree with defendant that for the purpose of determining the nature of defendant's practice on August 4, 1986, a compilation showing cases after that date is irrelevant. I do find all of Exhibit P–7 relevant to the reliability of defendant's testimony. At page 58 in Exhibit P–3 (the *Littles* transcript), defendant says that his relationship with Fleet ended "early summer of '86 I would guess." According to Exhibit P–7, Mr. Lieberman filed six actions for Fleet in June, 1986, seven in July, 1986, and nine between August of 1986 and April, 1987. This indicates a regular relationship with Fleet after "May, June, July, whatever, early summer '86" (Exhibit P–7, page 58). I have renumbered Proposed Finding of Fact No. 8 as Finding of Fact No. 7, and modified it to show only the thirty-two cases filed in June and July, 1986, thirty-one of which were for financial institution plaintiffs.

The bankruptcy judge's Proposed Conclusion of Law No. 1 states:

690

"1. Paragraphs one and two of the *Proposed Conclusions of Law—Littles Case,* page 9 *supra,* are incorporated herein by reference."

■ Defendant objected to incorporating conclusions of law by reference. I agree. The bankruptcy judge combined his opinion in this case with his opinion in the case of *Clara Littles v. Arnold R. Lieberman,* Misc. No. 88–0083. I have written separate opinions. To accommodate the first two conclusions of law, I will renumber Proposed Conclusions of Law Nos. 2–5, as my Conclusions of Law Nos. 3–6. As discussed below, numbers 1, 2, 3 and 6 (new numbers) are modified from the bankruptcy judge's recommendations.

The bankruptcy judge's Proposed Conclusion of Law No. 1 from the *Littles* case states:

"1. The instant proceeding is a non-core, related matter. Therefore, we properly heard the matter, but must submit proposed findings of fact and conclusions of law to the district court rather than determining it ourselves. *See* 28 U.S.C. § 157(c)(1)."

Defendant objects to Proposed Conclusion of Law No. 1 on the ground that the instant case is neither core or related. I adopt that proposed conclusion of law as my Conclusion of Law No. 1 in this case, with only formal changes.

■ I concur with the defendant's unanswered assertion that this is not a core proceeding. *See In re A.I.A. Industries, Inc.,* 75 B.R. 1013, 1016–20 (Bankr.E.D.Pa. 1987); and *In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bankr.E.D. Pa.1986). Nevertheless, as the decision in *Windsor,* following the clear language of 28 U.S.C. § 157(c)(1), points out, 67 B.R. at 673, this conclusion does *not* mean that the bankruptcy court could not "hear" the proceeding, but only that it could not "hear *and determine* " it; it thus was required to submit to the district court proposed findings of fact and conclusions of law. Despite the defendant's somewhat belated invocation of this issue in the briefing stage,

I nevertheless conclude that the issue was not waived and that the defendant did not consent to the bankruptcy court determining the matter. *Compare In re CG Realty Investment, Inc.,* 79 B.R. 249, 251 (Bankr. E.D.Pa.1987); *In re DSC Industries, Inc.,* 79 B.R. 244, 247 (Bankr.E.D.Pa.1987); and *A.I.A. Industries, supra,* 75 B.R. at 1017.

■ However, defendant further contends that this proceeding is not a "related" matter and that the action of the debtor in bringing the action in the bankruptcy court deprived him of his right to a jury trial. Firstly, the defendant had the right to timely move the district court to withdraw the reference of this proceeding to the bankruptcy court, pursuant to 28 U.S. C. § 157(d), but the time to do so has passed. Secondly, had defendant made a timely demand for a jury trial, which he failed to do at any time, he would have obtained same in the district court. *See Sibley v. Fulton DeKalb Collection Service,* 677 F.2d 830 (11th Cir.1982) and *In re Globe Parcel Service, Inc.,* 75 B.R. 381, 385 (E.D.Pa.1987). Hence, it was the defendant's own failure to act that resulted in a non-jury trial in the bankruptcy court.

■ The defendant contends that these proceedings were not "related" to the debtors' respective bankruptcy cases because it is a no-asset Chapter 7 case, and hence any recovery by plaintiff is unlikely to end up in the pockets of her creditors. However, this contention disregards the fact that plaintiff's cause of action is the property of her estate, given the broad scope of that term, even if the recovery is exempt. Consequently, a case based on that cause of action is a "related" matter.

In enacting the Bankruptcy Reform Act of 1978,[1] the Congress made a fundamental change in its approach to defining the bankruptcy estate. "The scope of 11 U.S. C. § 541(a)(1) is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act." *United States v. Whiting Pools, Inc.,* 462

---

1. Bankruptcy Reform Act of 1978, Pub.L. No. 95– 598, § 401, 92 Stat. 2549, 2682.

U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983). As stated in *Tignor v. Parkinson,* 729 F.2d 977, 980–81 (4th Cir.1984):

"The Bankruptcy Reform Act which repealed the óld Bankruptcy Act is a significant change in the law applicable to the property of a bankrupt estate. Under the old Act only non-exempt property was included as a part of the bankrupt estate under *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903). Under the Reform Act, however, all property of the debtor is included in the bankrupt estate, including exempt property. 'After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. § 522, and the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate.' Legislative History, 1978 U.S.Code Cong. & Ad.News at 5787, 5868, 6324 [hereinafter Leg.Hist.]. The Reform Act thus overrules *Lockwood,* Leg.Hist. at 5868, 6324, and we have previously so acknowledged in *Shirkey v. Leake,* 715 F.2d 859, 863 (4th Cir.1983). Under 11 U.S.C. § 541(a), a bankrupt estate includes, with minor exceptions not relevant here, 'all legal or equitable interests of the debtor in property as of the commencement of the case.' 'This includes all exempt property.' *Shirkey v. Leake,* 715 F.2d at 863. The legislative history of this statute is explicit in that: 'The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70(a) of the Bankruptcy Act....' Leg.Hist. at 5868, 6323. It 'includes as property of the estate all property of the debtor, even that needed for a fresh start.' *Id.*"

The *Tignor* reasoning was adopted by the Ninth Circuit in *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705 (9th Cir.1986). The test articulated in the Third Circuit is found in *In Re Bobroff,* 766 F.2d 797, 702 (3d Cir.1985) and *Pacor v.*

*Higgins,* 743 F.2d 984, 994 (3d Cir.1984) as follows:

"The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the out-come of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

Under these tests, plaintiff's cause of action in this matter, arising as it did before the filing, is clearly a part of the estate and therefore a related matter within the meaning of 28 U.S.C. § 157(c)(1).

■■■ The defendant also raises the argument that, because damages for personal injury are involved, the bankruptcy court is deprived of jurisdiction to hear this as a non-core but related case by the provisions of 28 U.S.C. § 157(b)(5).

28 U.S.C. § 157(b)(5) provides:

"(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

The best analysis of this issue is found in the bankruptcy judge's opinion in *In Re Littles,* 75 B.R. 240, 242 (Bankr.E.D.Pa. 1987), which I adopt:

"In analyzing that aspect of the Defendant's Motion [to Dismiss] based upon 28 U.S.C. § 157(b)(5), we note that we agree with the Plaintiff's assertion that the Defendant misapprehends the nature of the relief sought. The claim for damages based upon physical and emotional complaints has been pleaded as an element of her damages and not as a separate personal injury tort, e.g., intentional or negligent infliction of emotional distress. *See Sibley v. Fulton DeKalb Collection Service,* 677 F.2d 830 (11th Cir.1982)

(upon timely demand, party is entitled to a jury trial in an action for damages under FDCPA as the cause of action falls into traditional tort area). The plain language of the statute in issue provides for the award of actual damages. 15 U.S.C. § 1692k(a)(1). The analysis of whether damages for emotional distress have been proven under this statute need not rise to the level required to prove the tortious infliction of emotional distress. *See Carrigan v. Central Adjustment Bureau, Inc.,* 502 F.Supp. 468 (N.D.Ga. 1980).

We believe that emotional distress as a component of damages here, specifically allowed under a statute such as 15 U.S.C. § 1692(a), is analogous to emotional distress as a component of damages under 11 U.S.C. § 362(h), *see, In re Wagner; Wagner v. Ivory,* 74 B.R. 898, 905 (Bankr.E.D.Pa.1987), or actual damages under the Truth–in–Lending Act or unfair trade practices acts. *See In re Russell,* 72 B.R. 855, 861–64, 870–72 (Bankr. E.D.Pa.1987). It was properly never contended by the respective Defendants in those cases that the damages sought in those actions were the sort of damages contemplated by 28 U.S.C. § 157(b)(5). Similarly, we believe that violations of the FDCPA, by their very nature, (e.g., abusive, deceptive or unfair debt collection practices), are those kinds of actions which may be expected to cause emotional distress and, therefore, the availability of damages for such distress is of paramount importance. We find additional support for our analysis in the introductory statement of 'Congressional findings and declaration of purpose' of § 1692:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

Consequently, consequential damages for emotional or physical distress does not trigger the application of 11 U.S.C. § 157(b)(5).

Moreover, we note the unusual wording of § 157(b)(5), which refers to 'personal injury tort.' It appears to this Court that such reference must be limited to those torts or causes of action which require proof of damage as an element of the underlying cause of action. This is not necessary in an action for damages under the FDCPA."

For all of these reasons, I find that this is a noncore, related proceeding, which the bankruptcy court properly heard and on which this court can make a final determination.

The bankruptcy judge's Proposed Conclusion of Law No. 2 in the *Littles* case states:

"2. The Defendant is a 'debt collector,' subject to potential liability under the FDCPA and DCPTR [*sic*] for dispatch of the letter in issue."

My Conclusion of Law No. 2 is this proposed conclusion modified to reflect my decision, discussed below, not to rule on the applicability of the Pennsylvania statute and regulations.

Defendant objected to the finding that he is a "debt collector" within the meaning of FDCPA on two grounds. First, that there is insufficient, properly admitted evidence that he is engaged in debt collection. Failing that, he contends that since debt collection is only a part of his practice, his practice is not covered by the act. I will deal with the evidentiary contention first.

In his testimony in the *Littles* case (Exhibit P–3), defendant, at the expense of his credibility, fences with plaintiff's counsel from page 56 to page 78, trying to avoid answering the simple question of whether his practice regularly includes debt collection. Then, beginning on page 78, we have the following exchange with his own counsel, Curtis P. Cheyney, III, Esq., on cross-examination:

"BY MR. CHEYNEY:
Q. Okay. Let's first, if I may, Mr. Lieberman, talk about your practice in Sep-

tember of 1986. Could you describe your practice of law in September of 1986?

A. Okay. I'm in the general practice of law. I do every type of law work except criminal work.

Q. In that connection in about that period of time, did you represent both debtors and creditors in connection with loan transactions?

A. Yes.

Q. Did you regularly conduct business on behalf of creditors at that period of time? Was that a principal part of your practice?

A. It's a part of it.

Q. Was it a principal part in September of 1986?

A. Yes.

Q. Did your practice for those creditors include and was it principally the collection of debt?

A. Yes.

Q. But you also indicated that you represented creditors—debtors as well as creditors at that period of time?

A. Yes, I do."

Similarly, he interposed every possible objection to Exhibit P-7, which is discussed in connection with Finding of Fact No. 7 (Proposed Finding of Fact No. 8) *supra.* Exhibit P-7 is simply a certified extract from the docket of the Court of Common Pleas of Philadelphia County. That docket extract shows a substantial volume of collection work. The letter to Mary Crossley was not an isolated instance in a practice otherwise devoted to other types of work. No matter what else defendant may do in his practice, he clearly was, on August 4, 1986, regularly engaged in debt collection.

▄▄ The broader issue raised by defendant in his objection to the proposed conclusion is the scope of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA) and the scope of the Pennsylvania state Debt Collection Trade Practices Regulations, 37 PA CODE § 303.1 *et seq.,* as enforced through the Pennsylvania state Unfair Trade Practices and Consumer Protection Law, Pa.Stat. Ann. tit. 73, § 201–1 *et seq.* (DCTPR). The

question is whether FDCPA and DCTPR govern an attorney, such as the defendant, with a general practice which includes a possibly minor but regular practice in debt collection. Debt collection is an honorable and necessary part of legal practice. The overriding issue in this case is whether that practice is subject to state and federal statutory regulation. For the reasons given below, I believe that it is subject to federal regulation, but will defer to the Courts of the Commonwealth of Pennsylvania the question of state regulation.

The definition of "debt collector" in FDCPA is found at 15 U.S.C. § 1692a(6) as follows:

"(6) The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another...."

Prior to an Amendment contained in Pub. L. 99–361, and effective on July 9, 1986, attorneys were expressly excepted from this definition by the terms of former § 1692a(6)(F). *See* R. Hobbs, *Attorneys Must Now Comply with Fair Debt Collection Law,* X PA. J.L.–RPTR., No. 46, pg. 3 (Nov. 21, 1987); and M. Sweig, *Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act,* 21 NEW ENGLAND L.REV. 697, 698 (1987).

Addressing the "debt collector" definition in his article, Mr. Hobbs states, *supra,* at 3–4, as follows:

"There is no question that FDCPA applicability is not limited just to attorneys who make debt collection the focus of their practices. The definition of 'debt collector' includes any attorney 'who regularly collects or attempts to collect, directly or indirectly [consumer] debts owed or due or asserted to be owed or due another.' The key to this definition is the concept of engaging in collection activities 'regularly'.

Both the legislative history of this amendment and the case law regarding similar provisions in the Federal Consumer Credit Protection Act demonstrates that any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA. Both sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those 'who collect on an occasional basis' and 'the small law firm which collects debts incidentally to the general practice of law.' "

In his article, Mr. Sweig quotes directly from the most cogent legislative history of the FDCPA, Senate Report 95–382, 95th Cong., 1st Sess. 3 (1977), U.S.Code Cong. & Admin.News 1977, 1695, in concluding as follows, at 21 NEW ENGLAND L.REV. at 699:

"Congress has not defined 'regularly', but the legislative history indicates that attorneys must interpret this term broadly:

'[t]he requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect [debts] for others in the regular course of business.'

Thus, any law firm collecting debts for its clients on more than an 'isolated' basis (which theoretically could mean *once*) probably falls within the language of the statute."

Accordingly, I find that FDCPA does apply to a lawyer, such as defendant, with a general practice including a minor but regular practice in debt collection.

█ I now turn to the Pennsylvania regulations. The Debt Collection Trade Practices Regulations, 37 PA CODE § 303.2 (DCTPR), were promulgated by the Bureau of Consumer Protection as the delegatee of the Attorney General pursuant to § 3.1 of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.S.A. § 201–1 *et seq.* These regulations have been held to be duly promulgated in *Pennsylvania Retailers Association, Reliable,*

*Inc. v. Lazin,* 57 Pa.Commonwealth 232, 426 A.2d 712 (1981).

The Unfair Trade Practices and Consumer Protection Law regulates "trade and commerce", however, these terms, as defined in 73 Pa.S.A. § 201–2(3), do not expressly mention attorneys or the practice of the law. The definition of "debt collector" in the regulations is found at 37 PA CODE § 303.2, as follows:

"*Debt collector*—A person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor.

(i) The term includes:

(A) A person while attempting to collect a debt on behalf of a creditor, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for creditors to whom it is so related or affiliated and if the principal business of the person is not the collection of debts.

(B) A person while serving or attempting to serve legal process on another person in connection with the judicial enforcement of a debt.

(ii) The term includes:

(A) A creditor who, in the process of collecting his own debt, uses a name other than his own which would indicate that a third person is collecting or attempting to collect the debt.

(B) A person who sells or offers to sell forms represented to be a collection system, device or scheme which is intended or designed to collect debts."

The bankruptcy judge based his recommended award of $300.00 treble damages upon the legal assumption that this definition includes lawyers. Although there is no express reference to lawyers, this definition could be construed as being broad enough to include a lawyer, such as defendant, with a general practice including a minor but regular practice in debt collection. However, the matter does not end with this definition. For one thing, there

are numerous express references in other portions of the regulations to attorneys such as the prohibition in § 303.3(5) against debt collectors misrepresenting that they are "attorneys". Even more fundamentally, when considering the regulation of lawyers under Pennsylvania law, we must consider the Pennsylvania Constitution, Article V, Sec. 10(c), which provides in relevant part:

> " 'The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts ... and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch.... All laws shall be suspended to the extent that they are inconsistent with the rules prescribed under these provisions.'

The Supreme Court has declared the meaning of Article V, Section 10(c) in its Rule of Disciplinary Enforcement No. 103:

> 'The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules which shall supersede all other court rules and statutes pertaining to disciplinary enforcement heretofore promulgated.' "

There is a considerable body of law dealing with these provisions, and upholding them. Among the cases are *Kremer v. State Ethics Commission*, 503 Pa. 358, 469 A.2d 593 (1983) and *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980), involving judges; *Ballou v. State Ethics Commission*, 56 Pa.Commonwealth 240, 424 A.2d 983 (1981), involving a township solicitor; and *Forney v. State Ethics Commission*, 56 Pa.Commonwealth 539, 425 A.2d 66 (1981), involving the solicitor of a municipal authority. Each of these cases involved the Ethics Act, 65 Pa.S.A. § 401 *et seq.* Another case (really a *sua sponte* advisory opinion), *In Re 42 Pa.C.S. Sec. 1703*, 482 Pa. 522, 394 A.2d 444 (1978),

involved the effort of the legislature to subject the rule making proceedings of the Supreme Court to the Open Meeting Law, 65 Pa.S.A. § 261 *et seq.* Each of these cases upheld the exclusive constitutional jurisdiction of the Pennsylvania Supreme Court in the regulation of the courts and the practice of law, and held that various laws and regulations could not be construed to regulate lawyers or the courts.

The instant case might be distinguished from the cited cases in that it represents a private action against an attorney arising out of a statute and regulation rather than direct regulation of the courts or the practice of law. On the other hand, creation of this private cause of action may potentially impinge on the constitutional prerogative of the Pennsylvania Supreme Court. To avoid potential liability, a lawyer would not only be an officer of the court but would have to practice within a myriad of regulations promulgated by the Executive Branch of State Government. I have been unable to find any Pennsylvania cases directly on this point to guide our prediction of what the law is in this matter.

The rights of plaintiff in this case can be adequately vindicated under the federal statute. The rights of persons situated similarly to plaintiff can be vindicated under FDCPA in federal court (since there is no $10,000.00 or diversity jurisdictional requirement) or in state court. Although 28 U.S.C. § 157(b)(4) specifically exempts noncore matters from mandatory abstention, it would be far more appropriate for the question of regulation of Pennsylvania attorneys by Pennsylvania statute or regulation to be decided by the courts of Pennsylvania. The Supreme Court of Pennsylvania has a very exclusive and unique regulatory power in dealing with the members of its bar and I believe that they alone should decide the novel issues concerning the extent of that power and the meaning to be ascribed to the Pennsylvania Constitution in that regard. As the District Court said at page 799 in *Mattingly v. Newport Offshore Ltd.*, 57 B.R. 797 (D.C.R.I.1986), when confronted with novel issues of state law:

"The Congress has made it plain that, in respect to noncore proceedings ... (i.e., cases which assert purely state law causes of action), the federal courts should not 'rush to usurp the traditional precincts of the state courts. 'Nothing in [§ 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding ... related to a case under title 11.' *d.* at § 1334(c)(1). *See also id.* at § 1451(b) (granting this court authority to remand to the state court in such a situation 'on any equitable ground').

The legislative history of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333 (1984), which gave birth to the bewildering array of statutes here at issue, adequately evinces an abiding concern for continuing to allow state courts to interpret state law. E.g., H.R.Conf.Report No. 98–882, 98th Cong.2d Sess. 3 *reprinted in* 1984 U.S.Code Cong. & Ad.News 591, 594 (statement of Sen. Hatch). Such concerns crest in a case like this, where the plaintiff's complaint raises tenebrous issues of Rhode Island law wholly unrelated to the temporal coincidence of the defendant/debtor's financial straits."

See also the general authority of *Kaiser Steel Corp. v. W. S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *United Gas Pipeline Co. v. Ideal Cement Co.,* 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) at page 814, 96 S.Ct. at page 1244. Therefore, I abstain from deciding the part of plaintiff's claim relating to the Pennsylvania claim (DCTPR) and will dismiss it without prejudice. We recognize that this matter did not originate in a state court but nothing would prevent its being prosecuted there. I draw the parties' attention to 42 Pa.C.S.A. § 5103 regarding further prosecution of the DCTPR claim in Pennsylvania courts. Furthermore, consideration of the DCTPR claim is totally unnecessary to our decision in this case.

Since defendant falls within the definition of "debt collector" in FDCPA, but may not be subject to state regulation, I modify Proposed Conclusion of Law No. 2 as follows:

2. The defendant is a "debt collector" as defined in and subject to FDCPA. No opinion is given regarding applicability of DCTPR to lawyers.

■ The bankruptcy judge's Proposed Conclusion of Law No. 3 states:

"3. The letter in issue can reasonably be interpreted to threaten that a lawsuit will be brought against the recipient if payment in full is not made within one week, and was intended to convey such a threat. Since filing a lawsuit in such short order was not actually intended by the Defendant and was action which could not legally have been taken, as a thirty-day pre-suit notice was required under state law, dispatch of the letter violated 15 U.S.C. § 1692e(5) of the FDCPA and 37 PA.CODE § 303.3(14) of the CDPTR [*sic*]."

Defendant objected to the proposed conclusion on the grounds that the letter was not intended to threaten plaintiff, that there was no lawsuit filed, and that there was no evidence that a lawsuit, whenever filed, would have been illegal.

The operative language in the letter is: "Unless I receive payment in full within one week from the date of this letter, I will be compelled to proceed with suit against you."

15 U.S.C. § 1692e provides:

"**§ 1692. False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

.        .        .        .        .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

41 P.S. § 403 provides:

"§ 403. Notice of intention to foreclose

(a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

(b) Notice of intention to take action as specified in subsection (a) of this section shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage.

(c) The written notice shall clearly and conspicuously state:

(1) The particular obligation or real estate security interest;

(2) The nature of the default claimed;

(3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

(4) The time within which the debtor must cure the default;

(5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

(6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

(d) The notice of intention to foreclose provided in this section shall not be required where the residential mortgage debtor, has abandoned or voluntarily surrendered the property which is the subject of a residential mortgage."

The clear English of the letter implies that a legal action might commence if payment is not received within one week. This court can take judicial notice of the Pennsylvania statute that says that such action cannot be taken. There was clearly only one purpose to the letter; to frighten plaintiff into paying her debt to Fleet.

This letter, admittedly not bombastic or threatening of violence, may have been acceptable before FDCPA, but not now. The rules of the game have changed. An attorney pursuing a debtor is expected to be vigorous. He is required to be truthful.

No objection having been taken to Proposed Conclusions of Law Nos. 3 and 4, they are adopted as written as my Conclusions of Law Nos. 4 and 5.

The bankruptcy judge's Proposed Conclusion of Law No. 5 states:

"5. The Defendant is liable to Crossley for $100.00 actual damages pursuant to 15 U.S.C. § 1692k(a)(1); additional damages of $100.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); treble her actual damages, or $300.00, for violation of the CDPTR [*sic*] pursuant to 73 P.S. § 201–9.2(a); and reasonable attorney's fees to Crossley's counsel pursuant to 15 U.S.C. § 1692K(a)(3) and 73 P.S. § 201–9.2(a)."

My Conclusion of Law No. 6 is a complete reassessment of the damages recommended by the bankruptcy judge in his Proposed Conclusion of Law No. 5. By objecting to Proposed Conclusion of Law No. 5, defendant obligated me to make a *de novo* review of the entire record regarding damages. If he had not done so, the damages in this case, following the dismissal of the Pennsylvania claim (DCTPR) would be a nominal $200.00. In my view, for the reasons discussed below, the record does not justify such a low level of damages. Consequently, I find actual damages of

$1,000.00 and additional damages of $1,000.00, for a total of $2,000.00.

At the outset, I will deal with defendant's argument concerning the $25.00 value plaintiff placed on this cause of action in her bankruptcy action. In addition to the objection itself, defendant refers to it twice. At page 2 of his post-trial brief, defendant says:

"As of January 11, 1988, after all the discovery was completed and just three (3) days prior to their filing the Post–Trial Brief, and in which Ms. Crossley asserts how she was damaged; and the considered opinion of Ms. Crossley and her counsel is that the claim against Mr. Lieberman was worth *$25.00*. The value of the claim is listed as exempt property pursuant to § 522 of the Bankruptcy Code. This relevation is shocking!"

Again, at page 18 of his post-trial brief, defendant says:

"The value of this claim the plaintiff asks this Court to consider and which has allegedly caused her such hardship and illness is stated by her and her counsel through officially filed Court documents at $25.00 which value tends to indicate that the alleged injuries, emotional and physical, were not real or are not believable."

11 U.S.C. § 541(a)(1) defines property of the estate "as of the commencement of the case." Therefore, the value of $25.00 was not fixed, as of January 11, 1988, the date of Plaintiff's Chapter 7 Statement of Financial Affairs, or as of June 2, 1987, the date of Plaintiff's Chapter 13 Statement, but as of May 15, 1987, the date of the original Chapter 13 filing. At that time, plaintiff's claim was a mere right to bring an action, not an adjudicated case. Consequently, plaintiff rightly placed a low nominal value on that right. That nominal value has absolutely nothing to do with the damages that I am empowered to find on this record. I am frankly surprised and disappointed that defendant, as an attorney familiar with bankruptcy practice, would assert that it does.

In assessing the effect of the letter on the plaintiff, I must look at her actions, as well as at her own evaluation of the letter's effect. While plaintiff's testimony is uncorroborated, neither is it contradicted by any testimony offered by defendant. Plaintiff says she lost both sleep and weight, factors admittedly hard to value. But in addition to that assertion, we are told that plaintiff did a number of things. She called defendant's office. She called an attorney. She borrowed money from a friend to pay Fleet. All of these were rational acts. She quit her job so as to cash-in her pension contributions. That was an irrational act. To have done that shows that she was upset. Defendant, in taking plaintiff's deposition, spent much time and many questions trying to show plaintiff's sophistication as a debtor. What all of that testimony adds up to is a picture of an old woman, with an annual income of $5,160.00 (doubtless less than the legal fees and expenses in this case), trying desperately to maintain her independence. That she should be driven to "eating her seed corn" (eliminating her job earnings and cashing her pension contributions) shows the degree of that desparation. Whatever else may have been affecting plaintiff's peace of mind, I have no doubt that this letter was an important factor. Assessing all of these factors, I am changing the actual damages from the nominal amount of $100.00 to $1,000.00, an amount more nearly reflecting the harm done.

In assessing additional damages under 15 U.S.C. § 1692k(a)(2)(A), I must consider the factors laid down in 15 U.S.C. § 1692k(b)(1), which are:

"In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of non-compliance by the debt collector, the nature of such non-compliance, and the extent to which such non-compliance was intended."

With regard to frequency and persistence, I have, on this record, only the one

instance. This would be sufficient to support the award of the nominal amount of $100.00 recommended by the bankruptcy judge, but not more than that.

With regard to the extent to which the violation was intentional, on a first look at the record, that extent is small. The letter was sent shortly after the act was changed to eliminate the exception for attorneys, and while legally I cannot extend to an attorney the excuse of ignorance, I could, through grace, consider this a transitional aberration not to be repeated. If defendant had admitted his mistake and given his undertaking not to repeat it, I would honor his good faith by assessing no additional damages at all.

Unfortunately, that is not the tack defendant has taken. To begin with, defendant used every possible effort to avoid the jurisdiction of the bankruptcy court: he failed to answer the complaint until it was in default, he refused to appear at the hearing and avoided the service of a subpoena to appear. In the trial of this case and the *Littles* case, he chose to use every available device to deny that he is a debt collector when manifestly he is one. For twenty-two pages (56–78) in the testimony in the *Littles* case (Exhibit P–3), he dodged questions designed to elicit that simple fact. Then finally, when questioned by his own counsel, he admitted it. He fought hard to preclude from admission a certified record from the Court of Common Pleas of Philadelphia County (Exhibit P–7) that shows a heavy involvement in debt collection procedures. In trying so hard to hide that which is so obviously true, defendant's credibility and reputation for good faith suffered badly.

Defendant then attempted to deny what the plain language of the letter says: if you don't pay within one week "I will be compelled to proceed with suit against you." Defendant is at pains to point out that suit was never filed. That only underlines the point that no suit was ever intended.

There is really only one reason to send a letter such as this. It cannot be sent if a mortgage foreclosure is intended, because it does not meet the requirements for that. Its only use is to make the debtor *think* that a mortgage foreclosure is imminent, and thereby scare the debtor into paying. Prior to July 9, 1986, that did not state a federal cause of action. After that date, it did.

The conclusion that I draw from defendant's tactics, his denial of the obvious nature of his business and the letter, is that defendant intended to continue in his course of conduct. Because of his *mala fides*, I find additional damages in the amount of $1,000.00.

For the same reason, I find that the award of reasonable attorney's fees are warranted for the plaintiff. This is a simple matter that has been blown out of all proportion by the actions of defendant. Each of his major tactics in this litigation: ignoring the complaint, thereby allowing it to go to default before pleading, denying the jurisdiction of the bankruptcy court, refusing to appear at the hearing, denying the nature of his business, and denying the plain language of the letter, was bound to fail in the end. Yet, defendant persisted in these frivolous tactics, going to the extent of objecting to a judgment with only nominal damages. These tactics have involved extraordinary legal and judicial effort for a matter so small.

My Conclusions of Law are:

1. This proceeding is a non-core, related matter. Therefore, it was properly heard by the bankruptcy judge who submitted his proposed findings of fact and conclusions of law to me for final determination.

2. Defendant is a "debt collector" subject to the requirements of FDCPA.

3. The letter in issue can reasonably be interpreted to threaten that a lawsuit will be brought against the recipient if payment in full is not made within one week, and was intended to convey such a threat. Since filing a lawsuit in such short order was not actually intended by the defendant and was action which could not legally have been taken, as a thirty-day pre-suit notice was required under state law, dis-

patch of the letter violated 15 U.S.C. §§ 1692e(5) and (10) (FDCPA).

4. The letter failed to contain the written validation notice required by 15 U.S.C. § 1692g of the FDCPA and is therefore violative of that statutory provision as well.

5. No other asserted violations of the FDCPA are proven as actionable on this record.

6. The defendant is liable to plaintiff for $1,000.00 actual damages pursuant to 15 U.S.C. § 1692k(a)(1); additional damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees to plaintiff's counsel pursuant to 15 U.S.C. § 1692R(a)(3).

To the extent not modified by this opinion, I adopt the carefully reasoned recommendations of the bankruptcy judge.

An appropriate order follows.

## ORDER

AND NOW, this 13th day of July, 1988, upon consideration of the RECOMMENDED OPINION CONTAINING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW filed by Bankruptcy Judge David A. Scholl on February 12, 1988, and DEFENDANT ARNOLD R. LIEBERMAN'S OBJECTIONS thereto filed on March 3, 1988, it is ORDERED that:

1. Judgment is entered in favor of plaintiff Mary Crossley and against defendant Arnold R. Lieberman in the amount of TWO THOUSAND ($2,000.00) DOLLARS.

2. The parties are directed to confer to resolve the issue of attorney's fees due to plaintiff's counsel, but, if they are unable to do so, plaintiff's counsel is accorded an opportunity to file a motion requesting attorney's fees and costs, including compensation on the fee application, if such is necessary, per 15 U.S.C. § 1692k(a)(3), within thirty (30) days of the date of this order. The motion shall be procedurally in conformity with *n re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975).